**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS DIVISION**

_____

|  |  |  |
|---|---|---|
| NEW SLICE VENTURES LLC, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 7:17-CV-6694 |
| v. | : | |
| | : | |
| PEPSICO, INC., | : | |
| | : | |
| Defendant. | : | |

_____ :

## COMPLAINT FOR
## DECLARATORY JUDGMENT

**PLAINTIFF NEW SLICE VENTURES LLC** ("New Slice Ventures" or "Plaintiff"), by

its counsel GIOCONDA LAW GROUP PLLC hereby complains and alleges against **DEFENDANT**

**PEPSICO, INC.** ("PepsiCo" or the "Defendant"), upon information and belief, except for

allegations regarding Plaintiff or its counsel, as follows:

## NATURE OF THE ACTION

1.      This is a Declaratory Judgment lawsuit centering on PepsiCo's improper attempt to

continue to monopolize the "SLICE" soda brand.

2.      Decades ago, PepsiCo sold carbonated soft drinks under the brands "SLICE."

3.      Over the last decade, PepsiCo discontinued, intentionally abandoned and

surrendered all federally registered "SLICE" trademarks to the public domain.

4.      Plaintiff now seeks to lawfully commercialize a new "SLICE" brand, in connection

with fruit-juiced based beverages.

5.      Despite the undeniable fact that PepsiCo admittedly has not sold any "SLICE"-branded carbonated soft drinks to American consumers for many years, and intentionally abandoned and surrendered all twenty-eight (28) of its previously-registered federal trademarks for "SLICE", PepsiCo nonetheless continues to attempt to stifle lawful competition, by filing new trademark applications and opposition proceedings, and threatening Plaintiff with litigation if it were to use the SLICE brand in commerce.

6.      Therefore, Plaintiff respectfully seek a declaration of New Slice Ventures' lawful rights to sell beverage products in connection with the Intended Slice Marks without further complaint or interference from PepsiCo; a declaration that New Slice Ventures' Intended Slice Marks and related trade dresses do not infringe upon any of PepsiCo's claimed unregistered trademark or trade dress rights or dilute the same; and a declaration that New Slice Ventures' sale of products in connection with the Intended Slice Marks does not create a likelihood of consumer confusion with any of PepsiCo's unregistered trademarks or with any common law rights of PepsiCo in the unregistered trademarks or trade dresses of its products.

## PARTIES AND JURISDICTION

7.      **PLAINTIFF NEW SLICE VENTURES LLC** is a limited liability company organized under the laws of the State of Pennsylvania with a principal place of business located at 301 South State Street, Suite 102S, Newtown PA 18940.

8.      **DEFENDANT PEPSICO, INC.** is a North Carolina corporation with a principal place of business at 700 Anderson Hill Road, Purchase, NY 10577.  PepsiCo regularly does business in New York and this Judicial District.

9.      This is an action for Declaratory Judgment arising under (i) the Trademark Laws of the United States, namely, 15 U.S.C. § 1051 *et seq.,* and 15 U.S.C. § 1121 *et seq.*; (ii) the

Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and (iii) Rule 57 of the Federal Rules of Civil Procedure.  Thus, this Court has original jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§ 1331 and 1338.

10.     This Court has personal jurisdiction over PepsiCo as it is a resident of New York, has regularly transacted business in New York, and regularly done or solicited business in New York.

11.     Further, PepsiCo's conduct will cause injury to Plaintiff in New York and this Judicial District, and a substantial portion of the events giving rise to the claims herein arose in this District.  Venue in this District is, therefore, proper under 28 U.S.C. § 1391 *et seq.*

## FACTUAL BACKGROUND

### New Slice Ventures

12.     New Slice Ventures LLC is a Pennsylvania limited liability company formed on or about March 23, 2016.

13.     New Slice Ventures has formed preliminary business plans for the creation and launch of beverage products, has contacted numerous potential partners and investors, and has developed an anticipated timeline for the creation and launch of its intended products.

### PRELIMINARY "SLICE" PRODUCT DEVELOPMENT

14.     In April 2016, New Slice Ventures initially entered into a written agreement with a private label soda distributor for distributing new Slice-branded soft drink products.

15.     Since that time, to develop its potential product offerings under the "SLICE" brand, New Slice Ventures also signed confidentiality agreements with several third parties.

16.     Further, New Slice Ventures has explored signing a packaging/bottling agreement with an aseptic bottling facility located in Beloit, Wisconsin that is capable of processing and

3

packaging "SLICE"-branded fruit-juice based beverages for Plaintiff, and a laboratory located in Illinois that creates proprietary flavors for beverages.

17.     Plaintiff has had numerous in-person and telephonic meetings with these third parties, to discuss the beverages that Plaintiff would produce and market under the "SLICE" brand.

18.     Further, New Slice Ventures has sought to engage experienced, world-class creative and strategic support including an experienced brand manager who previously worked on the GATORADE® brand and an experienced entrepreneur who has successfully revived distressed and abandoned brands.

19.     However, Plaintiff has not used the Intended Slice Trademarks in commerce yet.

### PRELIMINARY BRAND DEVELOPMENT EFFORTS

20.     As part of its preliminary business plans, New Slice Ventures sought numerous trademark registrations on the Principal Register, on an intent to use basis.

21.     Specifically, New Slice Ventures filed trademark applications for (the "Intended Slice Marks"):

  a.  "**SLICE**" word mark in Class 32 for soft drinks (Serial No. 87/004,412);

  b.  "**NEW SLICE**" word mark in Class 32 for soft drinks (Serial No. 87/004,438);

  c.  "**DIET SLICE**"; word mark in Class 32 for soft drinks (Serial No. 87/004,458);

  d.  "**SLICE MANDARIN ORANGE**" word mark in Class 32 for soft drinks (Serial No. 87/004,469);

  e.  "**LEMON LIME SLICE**" word mark in Class 32 for soft drinks (Serial No. 87/004,485);

  f.  **"SLICE" plus Design** in Class 32 for soft drinks (Serial No. 87/004,525); and

  g.  **"SLICE"** word mark in Class 32 for fruit-juiced based beverages (Serial No. 87/271,131.

22.     The **"SLICE" plus Design** depicted in Petitioner's Trademark Application Serial

No. 87/004,525 is depicted below:



23.     The primary word in each of New Slice Ventures' Intended Slice Trademarks is SLICE.

24.     The term "SLICE" suggests that a slice of fruit is included in the beverage.

25.     The intent of Plaintiff is to create a beverage that is fruit-juice enhanced.

**PepsiCo's Intentional Abandonment of its SLICE Brand**

26.     In 1984, PepsiCo first introduced a lineup of sugary fruit-flavored carbonated soft drinks under the brand name "SLICE."

27.     By May 1987, Slice held 3.2 percent of the carbonated soft drink market.  See New York Times, July 15, 1988.

28.     One year later, it had fallen to 2.1 percent and was below 2 percent in June 1988. Id.

29.     By the summer of 2000, PepsiCo replaced Lemon Lime Slice in most markets with Sierra Mist®, which became a national brand in 2003.

30.     The rest of PepsiCo's Slice line of carbonated soft drink products was replaced in most markets by Tropicana Twister® Soda in the summer of 2005.

31.     In early 2006, PepsiCo briefly used the term "SLICE" in connection with a limited line of diet soda called "SLICE ONE."

32. PepsiCo's SLICE ONE-branded beverages were sold only in third party Wal-Mart's stores until at least 2009.

33. The SLICE ONE beverages were discontinued by PepsiCo and/or third party Wal-Mart since approximately 2009.

34. Today, PepsiCo's SLICE brand is consistently described by the media and commentators as a discontinued soda brand.  For example:

 a. A petition on *Change.org* asks PepsiCo to "bring back Slice" which it calls a carbonated soda brand that was "discontinued";

 b. *Ranker.com* places SLICE among "the world's best discontinued soda brands"; and

 c. *Complex.com* describes the SLICE brand's "lifespan" from 1984-2000, and calls it among the carbonated sodas "we wish still existed.";

 d. *Listverse.com* lists SLICE as one of the "Top 10 Discontinued Sodas"; and

 e. *MentalFloss.com* lists SLICE as one of "12 Discontinued Products from Coca-Cola and Pepsi".

**PepsiCo's Intentional Abandonment**
**and Voluntary Surrender of All SLICE Trademark Registrations**

35. Aware that it was not making any *bona fide* use of the "SLICE" brand in commerce in connection with the sale or marketing of carbonated or non-carbonated soft drinks to any consumers located within the United States, PepsiCo consciously and intentionally permitted the United States Patent and Trademark Office ("USPTO") to affirmatively cancel each and every one of its federal trademark registrations and applications related to "SLICE" over the last fifteen (15) years.

36.    The following is a true and accurate summary of PepsiCo's dead, cancelled trademark registrations and applications for "SLICE" ("Abandoned Slice Marks"):

| ## | U.S. Trademark Registration Number | Mark | Int'l Class | Date USPTO Cancelled Registration | Current Status |
|---|---|---|---|---|---|
| 1 | 2,219,028 |  | Class 32 (soft drinks) | December 4, 2016 | **FINAL JUDGMENT ENTERED, DEAD, CANCELLED** |
| 2 | 2,216,561 |  | Class 32 (soft drinks) | December 4, 2016 | **FINAL JUDGMENT ENTERED, DEAD, CANCELLED** |
| 3 | 1,962,426 | DR SLICE (Word Mark) | Class 32 (soft drinks) | Sept. 21, 2016 | **DEAD, CANCELLED** |
| 4 | 1,319,728 | SLICE (Word Mark) | 32 (soft drinks) | June 2, 2016 | **DEAD, CANCELLED** |
| 5 | 3,160,898 | SLICE ONE (Word Mark) | 32 (soft drinks) | May 24, 2013 | **DEAD, CANCELLED** |
| 6 | Serial No. 77/453,120 | SLICE SORBET (Word Mark) | Class 32 (soft drinks) | July 7, 2009 | **DEAD, CANCELLED** |
| 7 | 2,193,850 |  | 30 (candy) | July 9, 2005 | **DEAD, CANCELLED** |
| 8 | 2,151,477 | SLICE (Word Mark) | 30 (candy) | Jan. 15, 2005 | **DEAD, CANCELLED** |
| 9 | 2,153,137 |  | 30 (candy) | Jan. 22, 2005 | **DEAD, CANCELLED** |

| 10 | 1,925,759 |  | 32 (soft drinks) | July 20, 2002 | **DEAD, CANCELLED** |
|----|-----------|------|------------------|---------------|--------------------|
| 11 | 1,858,793 |  | 32 (soft drinks) | Oct. 27, 2001 | **DEAD, CANCELLED** |
| 12 | 1,858,792 |  | 32 (soft drinks) | Oct. 27, 2001 | **DEAD, CANCELLED** |
| 13 | 1,858,791 |  | 32 (soft drinks) | Oct. 27, 2001 | **DEAD, CANCELLED** |
| 14 | 1,858,790 |  | 32 (soft drinks) | Oct. 27, 2001 | **DEAD, CANCELLED** |

| 15 | 1,912,708 |  | 32 (soft drinks) | July 20, 2002 | **DEAD, CANCELLED** |
|----|-----------|----------------------|------------------|---------------|----------------------|
| 16 | 1,856,904 |  | 32 (soft drinks) | Oct. 14, 2001 | **DEAD, CANCELLED** |
| 17 | 1,858,789 |  | 32 (soft drinks) | Oct. 27, 2001 | **DEAD, CANCELLED** |
| 18 | 1,858,788 |  | 32 (soft drinks) | Oct. 27, 2001 | **DEAD, CANCELLED** |
| 10 | 1,858,787 |  | 32 (soft drinks) | Oct. 27, 2001 | **DEAD, CANCELLED** |
| 20 | 1,891,810 | SLICE.  NOW IN LIVING COLORS. (Word Mark) | 32 (soft drinks) | May 4, 2002 | **DEAD, CANCELLED** |

| 21 | 1,726,073 |  | 32 (soft drinks) | Apr. 27, 1999 | **DEAD, CANCELLED** |
|----|-----------|------|------------------|---------------|---------------------|
| 22 | 1,726,072 |  | 32 (soft drinks) | Apr. 27, 1999 | **DEAD, CANCELLED** |
| 23 | 1,731,463 |  | 32 (soft drinks) | May 17, 1999 | **DEAD, CANCELLED** |
| 24 | 1,735,130 |  | 32 (soft drinks) | May 31, 1999 | **DEAD, CANCELLED** |
| 25 | 1,744,017 |  | Class 32 (soft drinks) | July 6, 1999 | **DEAD, CANCELLED** |
| 26 | 1,359,566 |  | Class 32 (soft drinks) | June 24, 2006 | **DEAD, CANCELLED** |
| 27 | 1,335,812 |  | Class 32 (soft drinks) | Feb. 18, 2006 | **DEAD, CANCELLED** |
| 28 | 1,313,751 | WHAT A TIME FOR A SLICE (Word Mark) | Class 32 (soft drinks) | May 15, 1991 | **DEAD, CANCELLED** |

37.     As of the date of this <u>Complaint for Declaratory Judgment</u>, PepsiCo does not currently own a single federally registered trademark in the United States relating to "SLICE," in any class.

38.     PepsiCo has discontinued all use of the Abandoned Slice Marks in *bona fide* U.S. commerce.

39.     PepsiCo intentionally abandoned use of the Abandoned Slice Marks in *bona fide* U.S. commerce.

40.     PepsiCo abandoned use of the Abandoned Slice Marks in *bona fide* U.S. commerce with no intent to resume their use during at least the last three (3) years.

**Further Evidence Confirming
PepsiCo's Intentional Abandonment**

41.     To confirm the status of PepsiCo's intentional abandonment of SLICE, New Slice Ventures' representative contacted PepsiCo's customer service e-mail address in early March 2016, to inquire about the status of PepsiCo's "SLICE"-branded beverages.

42.     PepsiCo's official customer service representative responded by confirming that PepsiCo has "stopped producing Slice."

43.     PepsiCo's official customer service representative responded in a written e-mail, confirming that all of PepsiCo's Slice-branded products were "discontinued" and that there are "no current plans to reintroduce this product."

44.     Below is a redacted and highlighted copy of the e-mail received from PepsiCo's official customer service representative number 062586117A:

**From:** "no.reply@pepsi.com" <no.reply@pepsi.com>
**To:** REDACTED@yahoo.com
**Sent:** Wednesday, March 9, 2016 12:03 PM
**Subject:** A Reply from PepsiCo Consumer Relations 062586117A

Dear REDACTED,

Thank you for taking the time to contact us.  It's always a pleasure to hear from a fan of our products.

As you may or may not know, we've stopped producing Slice. We distributed this flavor in several markets, but it didn't sell as well as we had hoped and so it was discontinued. While there are no current plans to reintroduce this product, I'll be sure to forward your comments to the right folks here.

Again, many thanks for taking the time to contact us.  We appreciate your loyalty to our brands.

Asheley
Consumer Relations Representative
062586117A

45.     When New Slice Ventures' representative further contacted PepsiCo's toll-free customer service telephone number on March 8, 2016 to confirm the status of SLICE-branded products, PepsiCo's customer service representative "Nicole" confirmed that SLICE-branded soft drinks were not being manufactured by PepsiCo and are not currently available in any stores ("Nicole," PepsiCo's customer service representative = "CSR #1") (PepsiCo has been provided with the original audio recording of this conversation, and has not disputed its authenticity):

CSR #1:     Thank you for calling Pepsi, Nicole speaking. How may I help you?

CALLER:     Hi Nicole, I was just calling because I was wondering about a soda called Slice that Pepsi made, and I was wondering where I might be able to find that.  I haven't been able to find it in any of my local stores, lately.

CSR #1:     What was the name of it?

CALLER:     Slice.

CSR #1:     S-L-I-C-E?

CALLER:     Yes.

CSR #1:     Okay, do you mind holding one moment, please?

CALLER:     Not at all.

CSR #1:     Okay, thank you.

CALLER:     Thank you.
              *Hold music plays*

CSR #1:     Hi, thank you for holding.

CALLER:     Mmhmm.

CSR #1:     So that is something that we had back in the '80's, and that is just not something that we currently do produce right now.

CALLER:     Okay, so I wouldn't be able to find it in any stores at all, anymore?

CSR #1:     Correct.

CALLER:     Oh, okay. And you don't make it at all anymore?

CSR #1:     No.

CALLER:     Oh, okay.  Well, thank you for finding that out for me then.

CSR #1:     You're welcome.  Can I just have your zip code please?

CALLER:     Sure, it's 19020.

CSR #1:     Okay, great. Thank you.

CALLER:     Thank you so much.

CSR #1:     Have a great day.

CALLER:     You, too.

CSR #1:     Thank you, bye.


46.     As of March 8, 2016, the website owned and operated by PepsiCo at PepsiCoBeverageFacts.com listed 589 products sold by the Registrant, including Amp Energy, Aquafina, Dole, Gatorade, Izze, Brisk, Lipton, Manzanita Sol, Mountain Dew, Mug Root Beer, Naked juice, Ocean Spray, Pepsi, Propel, Pure Leaf, Sierra Mist, Sobe, Starbucks, Tazo and Tropicana, but Slice is not among them.

13

47. On April 18, 2016, the website owned and operated PepsiCo at PepsiCoBeverageFacts.com did not list Slice among PepsiCo's products.

48. A search on PepsiCoBeverageFacts.com for "SLICE" on March 8, 2016 produced no results.

49. A search on PepsiCoBeverageFacts.com for "SLICE" on April 18, 2016 produced no results.

50. A search of PepsiCo's website in November 2016 for "SLICE" revealed only the sale of "Slice Mango"-branded beverages in India, but not in the United States.

51. PepsiCo's Annual Report for 2006 stated in relevant part that "PepsiCo Beverages North America (PBNA) manufactures or uses contract manufacturers, markets and sells beverage concentrates, fountain syrups and finished goods, under various beverage brands including Pepsi, Mountain Dew, Gatorade, Tropicana Pure Premium, Sierra Mist, Tropicana juice drinks, Mug, Propel, SoBe, Tropicana Twister, Dole *and Slice*." (emphasis added).

52. PepsiCo's Annual Report for 2007 to 2016 did not mention SLICE products once.

53. When Plaintiff's representatives contacted third party Wal-Mart's customer service telephone number on March 8, 2016, third party Wal-Mart's customer service representatives explained that PepsiCo's SLICE-branded products were not currently available in any Wal-Mart stores, nor on WalMart.com.

54. When Plaintiff's representative visited several third-party Wal-Mart stores in several different states in March and April 2016, no SLICE-branded products appeared to be offered for sale and none were on display.

14

**The Prior Cancellation Proceedings and the Final Judgment Against PepsiCo**

55.     In April 2016, New Slice Ventures filed a Petition for Cancellation against the last three remaining registrations relating to SLICE owned by PepsiCo, captioned *New Slice Ventures LLC v. PepsiCo, Inc.*, Cancellation No. 92063604 (Trademark Trial and Appeal Board) (the "Prior Cancellation Proceedings.").

56.     While the Prior Cancellation Proceedings were pending, PepsiCo intentionally permitted the USPTO to cancel two more of its SLICE trademark registrations, due to PepsiCo's intentional decision not to file any statements of use or submit any specimens of use.

57.     Specifically, the critical word mark for "SLICE" was cancelled due to PepsiCo's decision not to file any statements of use or submit any specimens of use.

58.     After being served with discovery requests and notices of deposition, and after *subpoenas duces tecum* were served on non-parties to gather evidence of PepsiCo's intentional abandonment of SLICE, PepsiCo intentionally and voluntarily surrendered both of its remaining trademark registrations that were subject to cancellation for abandonment/non-use.

59.     The TTAB ultimately entered an adverse Final Judgment against PepsiCo, and cancelled the two remaining active trademark registrations that had been the subject of the Prior Cancellation Proceeding.  See **Exhibit A.**

60.     PepsiCo did not appeal or otherwise object to the Final Judgment.

61.     The Final Judgment on this disputed matter precludes PepsiCo from re-litigating the issue of the intentional abandonment of its trademark rights relating to the SLICE marks that were the subject of that proceeding, and which were voluntarily surrendered.

62.     Under the doctrines of claim and issue preclusion, as well as res judicata/collateral estoppel, "a judgment on the merits in a prior suit bars a second suit involving the same parties or

their privies based on the same cause of action." <u>Jet Inc. v. Sewage Aeration Sys.</u>, 223 F.3d 1360, 55 USPQ2d 1854, 1856 (Fed. Cir. 2000) (quoting <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 n.5 (1979)).[1] <u>See also B and B Hardware v. Hargis Industries, Inc.</u>, No. 13-352, 135 S.Ct. 1293, 2015 WL 1291915 (March 24, 2015); <u>Ashe v. PNC Financial Services Group, Incorporated</u>, 652 Fed.Appx. 155 (4th Cir. 2016) (collateral estoppel prevents re-litigation of same issue previously ruled upon by TTAB).[2]

## PepsiCo's New SLICE Trademark Applications

63. While the Prior Cancellation proceeding was being litigated, more than six (6) months ***after*** New Slice Ventures filed its six (6) pending Intent-to-Use Trademark Applications, PepsiCo filed ***new*** trademark applications of its own.

64. Specifically, PepsiCo's "New Trademark Applications" consist of:

   a. **Serial No. 87/200,422** filed on October 12, 2016 for the SLICE word mark in Class 32 for "CONCENTRATES AND SYRUPS FOR MAKING SOFT DRINKS", with a claimed date of first use in commerce of "at least as early as 05/21/1984"; and

   b. **Serial No. 87/228,658** for SLICE plus Design in Class 32 for "CONCENTRATES AND SYRUPS FOR MAKING SOFT DRINKS", with a claimed date of first use in commerce of "at least as early as 2013".

65. However, the Specimens of Use submitted by PepsiCo's in-house counsel in connection with PepsiCo's New Trademark Applications do not evidence a *bona fide* trademark use of the term "SLICE" in connection with the manufacture and/or sale of soft drinks to consumers in the United States.

---

[1] The judicial doctrine now generally known as claim preclusion was earlier known as *res judicata*. See <u>Senju Pharm. Co. v. Apotex Inc.</u>, 746 F.3d 1344, 110 USPQ2d 1261, 1263 (Fed. Cir. 2014).

[2] The TTAB is currently considering New Slice Ventures' Motion for Summary Judgment against PepsiCo's August 2, 2017 <u>Notice of Opposition</u> on this basis.

66.     Rather, to the extent they are authentic, the Specimens of Use demonstrate only that the term "SLICE" were merely used by PepsiCo at some indeterminate point in time, and only incidentally in connection with industrial syrup packages that were shipped to distributors located outside the United States, for use in dispensers and vending machines located in the Carribbean, such as the Bahamas.  See below:



67.     A letter from PepsiCo's outside counsel to New Slice Ventures states: "PepsiCo packages the SLICE fountain syrup at its location in Riviera, Florida, ***and ships it to distributors in the Caribbean, including Thompson Trading, a distributor in the Bahamas."***  See **Exhibit B** (emphasis added).

68.     The Specimens of Use submitted by PepsiCo's in-house counsel in connection with PepsiCo's New Trademark Applications are not a *bona fide* trademark use of the term "SLICE" in United States commerce, and were not a continuous use of that mark in connection with soft drinks

sold to consumers in the United States sufficient to overcome the effects of the legal presumption of abandonment of the Abandoned Slice Marks or the Final Judgment from the TTAB.

69.     Furthermore, there is no likelihood of confusion between New Slice Ventures' Intended Slice Marks and PepsiCo's New Trademark Applications.

70.     By filing its New Trademark Applications and the Opposition, PepsiCo alleged to have made prior use of the term SLICE in commerce, effectively seeking to avoid the preclusive effect of the Final Judgment, and of the consequences of its own intentional abandonment of the "SLICE" brand.

71.     The USPTO has suspended consideration of PepsiCo's recent trademark applications.

**PepsiCo's November 2016 Threat Letter
and Other Conduct Creates a Justiciable Controversy**

72.     On November 23, 2016, PepsiCo's outside counsel sent New Slice Ventures a formal "cease and desist" letter, explicitly threatening New Slice Ventures with trademark litigation, and claiming priority of rights.  See **Exhibit B.**

73.     In that letter, PepsiCo's outside counsel does not acknowledge the preclusive effect of the Final Judgment entered against it by the TTAB, flatly asserting that "PepsiCo has no intent to abandon its SLICE marks…" Id.

74.     The letter also threatens Plaintiff with injunctions, disgorgement of profits and punitive damages, *inter alia* (id.):

The purported marks depicted in New Slice Ventures' pending applications to register the "Intended Slice Marks" … are likely to cause confusion, mistake or deception amongst consumers given the similar, if not identical, nature of the marks and the related or complementary nature of the parties' respective goods.

Accordingly, any use of the Intended Slice Marks will constitute trademark infringement and unfair competition in violation of the United States Trademark Act, 15 U.S.C. § 1501 *et seq.,* and state statutory and common law, entitling PepsiCo to injunctive relief, and an award of damages, disgorgement of your profits, punitive damages, costs and attorneys' fees.  On behalf of PepsiCo, we request that you …. Immediately: (1) forego and/or cease and forever desist all use of or plans to use the Intended Slice Marks…; and (ii) expressly abandon the trademark applications for such marks.

75.     PepsiCo's outside counsel's letter to Plaintiff also threatens to obstruct Plaintiff's pending trademark applications in the USPTO, stating: "Should New Slice Ventures continue to pursue its pending applications, PepsiCo will oppose them upon publication."  Id.

76.     In March 2017 and thereafter, Plaintiff sought to engage PepsiCo in a good faith discussion to avoid the necessity of this litigation.

77.     As of today, PepsiCo has not responded to Plaintiff's request to have such a meeting.

78.     Furthermore, on or about April 11, 2017, PepsiCo sought and received a ninety-day extension of time from the USPTO to oppose New Slice Ventures' Intended Slice Mark, alleging that it needs three months of additional time "to investigate the claim."

79.     On August 2, 2017, PepsiCo filed and served a formal Notice of Opposition to New Slice Ventures' pending trademark applications, which New Slice Ventures has answered and moved for summary judgment.  See **Exhibit C** (PepsiCo's Notice of Opposition) **and Exhibit D** (New Slice Ventures' Answer).

80.     In its August 2, 2017 <u>Notice of Opposition</u>, PepsiCo asserted the following:

> 15.     ...As a result of the long and continuous use, as well as prior marketing, advertising and promotion of the SLICE Marks on and in association with PepsiCo's various goods, including, but not limited to, concentrates, fountain drinks, and soft drinks, consumers have associated marks consisting of or containing the term SLICE on such products or variants with a single source, that is, PepsiCo.
>
> 16.     In view of such usage, the SLICE Marks, including SLICE, represent assets of significant value to PepsiCo.
>
> 20.     The purported marks depicted in New Slice Ventures' pending applications to register the "Intended Slice Marks" are likely to cause confusion, mistake or deception amongst consumers given the similar, if not identical, nature of the marks and the related or complementary nature of the parties' respective goods.
>
> 27.     PepsiCo will be damaged by the issuance of the registrations for the Intended SLICE Marks sought by Applicant within the meaning of 15 U.S.C. §1063 because such registrations would support and assist Applicant in the confusing, misleading, and/or deceptive use of SLICE, and would give color of exclusive statutory rights to Applicant in violation and derogation of the prior and superior rights of Opposer.

81.     Consequently, as a direct and foreseeable result of PepsiCo's continued obstruction and overt threats of litigation, New Slice Ventures cannot proceed with using, commercializing, licensing or registering the Intended Slice Marks without continued and unlawful interference from PepsiCo including PepsiCo's outside counsel's explicit warning that PepsiCo would pursue extreme remedies against New Slice Ventures and its affiliates or owners, including injunctions, disgorgement of profits and punitive damages, were Plaintiff to use the Intended Slice Marks in commerce.

82.     Subsequently, in recent settlement-related e-mail correspondence, PepsiCo's outside counsel states that PepsiCo has "withdrawn" its demands made in the November 23, 2016 cease and desist letter.

83.     However, New Slice Ventures has requested—and PepsiCo has thus far failed to produce—any further written correspondence that clearly and unambiguously states that PepsiCo agrees not to sue New Slice Ventures were New Slice Ventures to commercialize its products, or that PepsiCo irrevocably waives and renounces its claims to prior trademark rights to "SLICE".

84.     Furthermore, PepsiCo has not withdrawn its Notice of Opposition.

85.     PepsiCo has therefore created a reasonable apprehension of suit against New Slice Ventures, which is entitled to use the Intended Slice Marks and receive registrations on the Principal Register for the Intended Slice Marks, without any valid objection or obstruction from PepsiCo.

86.     PepsiCo's continuing and unlawful interference constitutes a deliberate obstruction which was designed to impact Plaintiff, as Plaintiff cannot proceed with various opportunities that it was in the process of exploring to commercialize the Intended Slice Marks.

87.     For example, New Slice Ventures' distributors cannot proceed with labeling and commercializing the SLICE-branded products until New Slice Ventures can show that it owns the Intended Slice Marks.

88.     Plaintiff therefore respectfully seeks a Declaratory Judgment that use and registration of the Intended Slice Marks do not violate any valid, alleged trademark rights asserted against it by PepsiCo, create no likelihood of consumer confusion with any of PepsiCo's existing rights or usage, do not constitute unfair competition with PepsiCo and do not constitute actionable dilution of any claimed valid trademark or other legal or equitable right owned by PepsiCo.

89.     Given the conclusive record of PepsiCo's intentional abandonment of all trademark rights, New Slice Ventures was legally entitled to receive a registration on the Principal Register for the Intended Slice Marks and Plaintiff is entitled to begin using the Intended Slice Marks in commerce, without lawful objection or continued obstruction from PepsiCo.

## FIRST CAUSE OF ACTION

### DECLARATORY JUDGMENT OF
### TRADEMARK ABANDONMENT, INVALIDITY, NON-INFRINGEMENT
### NO UNFAIR COMPETITION AND NON-DILUTION

90.     Plaintiff reinstates and realleges paragraphs 1 through 89 inclusive, as if fully set forth herein.

91.     All use of PepsiCo's Abandoned Slice Marks was intentionally abandoned under the applicable provisions of the Lanham Act, 15 U.S.C. § 1127, Lanham Act § 45.

92.     Nonetheless, PepsiCo has alleged that any use and/or federal registration by New Slice Ventures (and its owners or affiliates) of the Intended Slice Marks on products or services and in advertising, would be and is an infringement of PepsiCo's claimed rights, and would constitute trademark infringement and unfair competition.  See **Exhibit B.**

93.     PepsiCo currently owns no valid or enforceable federal trademark registrations on the Slice Marks.

94.     PepsiCo currently owns no valid or enforceable common law rights to the Slice Marks.

95.     Further, PepsiCo's explicit threat of filing litigation against Plaintiff and the actual filing of an Opposition in the TTAB against Plaintiff's pending trademark applications constitute a clear, unambiguous claim that New Slice Ventures' intended sale of goods and services under its Intended Slice Marks would be an infringement of PepsiCo's claimed trademark and common

law rights and would allegedly constitute unfair competition.

96.     New Slice Ventures is entitled to receive federal trademark registrations for the Intended Slice Marks, as federal registrations confer benefits to the Registrant against others.

97.     For example, infringement of a registered trademark is actionable under the Lanham Act, 15 U.S.C. § 1114(1), which permits a Registrant to commence a civil action in U.S. District Court to obtain, *inter alia*, injunctive relief to prevent violation of any such rights, 15 U.S.C. § 1116; and monetary relief including profits attributable to the infringement, *Id*. at § 1117.

98.     The letter sent to New Slice Ventures from PepsiCo's outside counsel in conjunction with the now-pending Opposition constitutes a clear, unambiguous claim that Plaintiff's intended sale of goods and services under the Intended Slice Marks would be an infringement of PepsiCo's claimed rights and would lead to further litigation by PepsiCo, seeking "punitive damages," and other extraordinary relief.

99.     Plaintiff denies that its good faith intended use of the Intended Slice Trademarks does, or will create actionable confusion with PepsiCo or its products.

100.    The unreasonable threats of PepsiCo are intended to disrupt Plaintiff's lawful business, thereby requiring an adjudication of the legal and equitable rights of the parties in the dispute identified herein, before Plaintiff suffers any further damage.

101.    Were New Slice Ventures to proceed with commercializing the Intended Marks, New Slice Ventures and its owners, members, affiliates, business partners and all those acting in active concert or participation therewith will placed in the position of being sued and/or threatened with suit by PepsiCo.

102.    Further, were Plaintiff to proceed with commercializing the Intended Marks, New Slice Ventures would be unable to secure trademark registrations to which it is entitled, because

of PepsiCo's unwarranted obstruction.

103.    An actual case or controversy therefore exists within the Court's jurisdiction, concerning the validity and enforceability of PepsiCo's claimed rights, and the respective rights and obligations of the parties hereto.  *See* 28 U.S.C. §§ 2201, 2202; FED. R. CIV. P. 57.

104.    Plaintiff has no adequate remedy at law and therefore seek declaratory, preliminary and permanent injunctive relief as set forth herein.

## SECOND CAUSE OF ACTION

## DECLARATORY JUDGMENT OF TRADEMARK UNENFORCEABILITY

105.    Plaintiff reinstates and realleges paragraphs 1 through 104 inclusive, as if fully set forth herein.

106.    PepsiCo has formally alleged that the use and sale by New Slice Ventures (and its owners, members and affiliates) of its Intended Slice Marks on or in connection with products or services and in advertising, would be and is an infringement of PepsiCo's claimed rights and would constitute trademark infringement and unfair competition.

107.    Further, PepsiCo's explicit threat of filing litigation and commencement of a formal Opposition in the TTAB against New Slice Ventures' trademark applications constitute a clear, unambiguous claim that Plaintiff's intended sale of goods and services under the Intended Slice Marks would be an infringement of PepsiCo's claimed trademark and common law rights and constitute unfair competition.

108.    Plaintiff denies that its good faith intended sale of products incorporating the Intended Slice Marks does, or will create actionable confusion with PepsiCo's existing trademarks or its products, or unfairly compete with PepsiCo.

109.    The unreasonable objections of PepsiCo are intended to disrupt Plaintiff's lawful

business, thereby requiring an adjudication of the rights of the parties in the dispute identified herein, before Plaintiff suffers any further damage.

110.    An actual case or controversy therefore exists within the Court's jurisdiction, concerning the validity, enforceability and scope of PepsiCo's claimed trademark rights, and the respective rights and obligations of the parties.  *See* 28 U.S.C. §§ 2201, 2202; FED. R. CIV. P. 57.

111.    PepsiCo's Slice Marks are unenforceable against Plaintiff because of PepsiCo's conduct.

112.    Plaintiff has no adequate remedy at law and therefore seek declaratory, preliminary and permanent injunctive relief as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

A.  A declaration of Plaintiff's lawful rights to sell beverage products in connection with the Intended Slice Marks without further complaint or interference from PepsiCo;

B.  A declaration that New Slice Ventures' Intended Slice Marks and related trade dresses do not and would not infringe upon any of PepsiCo's claimed unregistered trademark or trade dress rights or dilute the same;

C.  A declaration that Plaintiff's intended sale of products in connection with the Intended Slice Marks does not create a likelihood of consumer confusion with any of PepsiCo's unregistered trademarks or with any common law rights of PepsiCo in the unregistered trademarks or trade dresses of its products; and

D.  Such other and further relief as this Court shall deem necessary and appropriate.

September 1, 2017                          Respectfully Submitted,

                                          Joseph C. Gioconda (JG4716)
                                          Joseph M. Forgione (JF8630)
                                          THE GIOCONDA LAW GROUP PLLC
                                          100 Park Avenue, 16th Floor
                                          New York, NY 10117
                                          Telephone: (212) 235-1220
                                          Facsimile: (888) 697-9665
                                          *Joseph.Gioconda@GiocondaLaw.com*
                                          *Joseph.Forgione@GiocondaLaw.com*

                                          *Attorneys for Plaintiff*
                                          New Slice Ventures LLC